IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARGARET DIAZ, etc., )
 )
          Plaintiff, )
 )
v. ) No. 08 C 532
 )
CITY OF CHICAGO, et al., )
 )
          Defendants. )

## MEMORANDUM OPINION AND ORDER

Margaret Diaz ("Diaz"), mother and special administrator of the estate of Trinidad Herrara ("Herrara"), filed this action on January 24, 2008 (1) asserting that various police officers had violated Herrara's civil rights and (2) adding multiple additional state law tort theories of recovery.[1] Diaz further seeks to hold the City of Chicago ("City") liable for the actions of its officers under respondeat superior principles. Defendants have jointly moved under Rule 12(b)(6) to dismiss the state law counts as time-barred under the Illinois State Tort Immunity Act ("Act") and to dismiss City from the federal charges as barred by Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978). For the following reasons, defendants' motion is granted in part and denied in part.

## Background

This suit stems from an incident described in the FAC. On September 15, 2006 defendant police officer Hanley, assisted by defendant police officer Zivat, encountered

---

[1] Although the First Amended Complaint ("FAC") advances only one "claim" in the federal sense (see NAACP v. American Family Mut. Ins. Co., 978 F.2d 287, 291-93 (7th Cir. 1992)), Diaz' counsel has followed the nearly universal practice of Illinois lawyers of carving up a claim into separate counts (something that is not the function of counts as set out in Fed. R. Civ. P. ("Rule") 10(b)), based on different theories of recovery. To avoid awkwardness in dealing with the current motion, this opinion will conform to the parties' treatment of the issues in that respect.

Herrara, forced him to the ground and handcuffed him. They radioed for assistance, and defendant police officers Padilla, Glinsky and Gaal responded. Some of the officers then placed Herrara in leg irons. At some point more defendant police officers--Cassel, Zepada, Moser and O'Leary--also arrived at the scene.

Herrara was then taken to Jackson Park Hospital, arriving there at 2:20 p.m. Shortly thereafter, but while Herrara was still in the squad car, he suffered cardiac arrest. He was transported to the emergency room, where he died at 3:20 p.m. that same day. Later a medical examiner's report found numerous traumatic injuries to multiple parts of Herrara's body.

Some six months after the original January 24, 2008 filing of this action (on July 30, 2008), Diaz amended the Complaint to clarify the counts and number of defendants. Her FAC alleges that the individual police officer defendants, acting under color of state law, violated Herrara's civil rights when they either used excessive force to restrain him or failed to prevent fellow officers from using such excessive force. It also charges defendants with having committed the state law offenses of false imprisonment, assault and battery, wrongful death, negligence and intentional infliction of emotional distress.

City seeks dismissal from the civil rights charge in Count I via <u>Monell</u>. All defendants seek to dismiss the state law charges in Counts II through VI as barred by the statute of limitations prescribed in the Act. Those subjects will be dealt with here seriatim.

### Rule 12(b)(6) Standards

Any Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case (see, e.g., <u>Gibson v. City of Chicago</u>, 910 F.2d 1510, 1520 (7th Cir. 1990)). That calls for a pro-plaintiff perspective that accepts as true all of the complaint's well-pleaded factual

allegations, together with drawing all reasonable favorable inferences from those allegations (see, e.g., Barnes v. Briley, 420 F.3d 673, 677 (7th Cir. 2005)).

## 42 U.S.C. §1983 ("Section 1983") Bases for Recovery

Diaz labels Count I "Section Civil Rights Violation" and seeks there to hold all defendants jointly and severally liable for compensatory and punitive damages. Based upon language found elsewhere in the FAC, this Court construes Count I as invoking Section 1983 as a predicate for finding a violation of Herrara's civil rights.

Monell, 436 U.S. at 691 teaches that "a municipality cannot be held liable under §1983 on a respondeat superior theory." Instead "it is when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983" (id.). Cases following Monell have recognized three ways in which a municipality can be said to have violated an individual's constitutional rights--although the "plausibility" gloss added to the Rule 12(b)(6) analysis by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) has made the factual requirements of a complaint more demanding, the articulation of those three routes in Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 735 (7th Cir. 1994)(internal citations and quotation marks omitted) remains accurate:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

Here the FAC's allegations fail to support any of those three grounds for municipal liability under Section 1983. FAC ¶6 says only this, which falls short as to each of them:

> The CITY operates the Chicago Police Department. The CITY was at all times relevant to this Complaint, and currently is, the employer of the Defendant police officers. Furthermore, the CITY operates, directs and controls the departments, which employ or employed the Defendant police officers.

Nor does Diaz' response to the motion to dismiss offer any additional guidance--it is completely silent on the matter. Those FAC ¶6 allegations assert nothing more than respondeat superior doctrine simpliciter, and they fail to meet the Bell Atl. standard (indeed, their survival would have been highly problematic even pre-Bell Atl.). Hence City is dismissed from Count I with prejudice.

### State Law Contentions

Next defendants argue the untimeliness of the state law theories of recovery under the Act, which reads in relevant part (745 ILCS 10/8-101):

> No civil action...may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued.

Although Diaz must overcome several hurdles to avoid dismissal in those terms, the benefit of the already-referred-to favorable inferences from her allegations enables her to dodge the bullet--at least for the present.

Because the statute of limitations is an affirmative defense under Rule 8(c)(1), "it is rarely a good reason to dismiss under Rule 12(b)(6)" (Reiser v. Residential Funding Corp., 380 F.3d 1027, 1030 (7th Cir. 2004)). In general a complaint need not anticipate or overcome affirmative defenses such as the statute of limitations (Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901-02 (7th Cir. 2004)). Although dismissal may be appropriate when a plaintiff effectively pleads herself out of court by alleging facts sufficient to establish the

statute of limitations defense (id.), Foss v. Bear, Stearns & Co., 394 F.3d 540, 542 (7th Cir. 2005) limits that prospect in extraordinarily stringent terms:

> Unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development.

In this instance defendants contend that the state law causes of action "accrued" (the Act's kickoff date) on the date of Herrara's death, September 15, 2006, while Diaz urges accrual at a much later date because she did not at first know the circumstances surrounding Herrara's death or that it was wrongfully caused.[2] Those matters require further factual exploration, but the FAC does not meet the demanding Foss standard even on defendants' premise that all of plaintiff's state law claims accrued on the date of Herrara's death (the earliest possible date).

To that end Diaz asserts that even under the assumption of a date-of-death accrual, the statute of limitations should be tolled for two reasons. First, she contends that defendants fraudulently concealed from her the causes of action and the identity of the officers. Second, she argues that her filing of a complaint for discovery under Ill. Sup. Ct. Rule 224 tolled the statute of limitations.

Fraudulent Concealment

Illinois has codified its doctrine of fraudulent concealment in 735 ILCS 5/13-215:

> If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such a cause of action.

---

[2] Though Diaz' Resp. 4 acknowledges that she knew of Herrara's death on September 16, 2006, she focuses instead on when she assertedly became aware of defendants' "wrongful conduct" (id. at 5).

As <u>Cangemi v. Advocate S. Suburban Hosp.</u>, 364 Ill.App.3d 446, 458, 845 N.E.2d 792, 804 (1st Dist. 2006)(internal citations and quotation marks omitted) teaches:

> Generally, a plaintiff who invokes section 13-215 to toll the statute of limitations must show affirmative acts by the defendant which were designed to prevent, and in fact did prevent, the discovery of the claim. Mere silence of the defendant and the mere failure on the part of the plaintiff to learn of a cause of action do not amount to fraudulent concealment.

Thus not every act of claimed concealment on the part of a defendant triggers the statute--it is the existence of the cause of action itself that must be concealed from the plaintiff (<u>Guebard v. Jabaay</u>, 65 Ill.App.3d 255, 260, 381 N.E.2d 1164, 1167-68 (2d Dist. 1978), collecting cases from Illinois and other jurisdictions). To the identical effect, <u>Smith v. City of Chicago Heights</u>, 951 F.2d 834, 837 (7th Cir. 1992) confirms that "Illinois courts have unequivocally construed this provision to reach only fraudulent concealment of the cause of action--not fraudulent concealment of the tortfeasor."

Even though the current submissions go beyond the FAC itself (Diaz tendered, as Ex. B to her response, a copy of a police report documenting Herrara's arrest), the record at this stage does not provide a definitive answer to the inquiry. In addition to the fact that the narrative description portion of the police report is partially redacted, neither party has informed this Court when Diaz requested the report or when defendants provided it to Diaz. Relatedly, though Diaz is in possession of a copy of the Cook County Medical Examiner's Report of Postmortem Examination that documents Herrara's injuries, again the date when Diaz came into possession of that report has not been identified. It was surely before September 6, 2007, the date on which the Circuit Court of Cook County issued an order dismissing the Office of the Medical Examiner as a respondent in discovery in a state court

discovery action because the Office had "fully complied and produced all documents in its possession"--but how long before?[3]

Diaz lays stress on the redaction in the police report and, to a lesser extent, on defendants' more general reluctance to release the names of the officers involved in Herrara's arrest, as assertedly constituting the "affirmative acts" necessary to invoke the fraudulent concealment statute. But each of those factors leaves some questions unanswered.

As for the relatively small redaction in the police report, it is doubtful that it sufficed to conceal the potential cause of action from Diaz. She surely became aware at some point of Herrara's having been arrested, and that presumably prompted her to request the police report. But no input has been provided as to when Diaz acquired that awareness and as to what role, if any, defendants played in hindering that awareness. If September 6, 2007 or some time shortly before that was the relevant date, it should be noted that September 6 was just nine days short of the September 15, 2007 anniversary of Herrara's death. And that would of course pose the question whether so brief a time within which Diaz would have had to file suit would call for a relaxation of the statutory limitations period on fraudulent concealment grounds and, if so, for how long.

As for the withholding of the names of the officers involved in Herrara's arrest, it will be remembered that the cases say 735 ILCS 5/13-215 speaks in terms of concealment of the cause of action, not of the tortfeasor (Smith, 951 F.2d at 837). But does that same aphorism apply if the affirmative concealment of the tortfeasor's identity precludes the institution of a

---

[3] That may be relevant to a consideration of tolling the statute of limitations, a subject addressed a bit further on.

lawsuit because there is no defendant to target? Perhaps not--see, e.g., Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). But Bivens and its possible state law counterparts do not necessarily dispose of the concealment issue--after all, the ability to file a complaint in those anonymous terms does not preclude an individual defendant who is named only after the first anniversary of the action's accrual from raising the statutory limitations period as a ground for his or her dismissal. At a minimum, that and other unanswered questions counsel against the dismissal of the state law causes of action at this threshold stage.

That same result is called for by consideration of Diaz' added argument based on the broader concept of equitable estoppel, described in these terms in Singletary v. Continental Ill. Nat'l Bank & Trust Co., 9 F.3d 1236, 1241 (7th Cir. 1993):

> Equitable estoppel suspends the running of the statute of limitations during any period in which the defendants took active steps to prevent the plaintiff from suing, as by promising the plaintiff not to plead the statute of limitations pending settlement talks or by concealing evidence form the plaintiff that he needed in order to determine that he had a claim.

That too presents the same questions as to timing discussed earlier. And that applies a fortiori to the often more generous concept of equitable tolling--see the discussion of the two doctrines, as applied by Illinois caselaw, in the opinion by this Court's colleague Honorable Virginia Kendall in Vodak v. City of Chicago, No. 03 C 2463, 2006 WL 1049736, at *4-*5 (N.D. Ill. Apr. 19).

In sum, defendants' statute of limitations defense does not prevail at this early stage. They must answer the state law causes of action in the FAC (raising limitations as an affirmative defense if they wish). Denial of their Rule 12(b)(6) motion is without prejudice to a possible future effort to reject those causes of action in substantive terms if and when the

factual development permits such an effort.

### Ill. Sup. Ct. Rule 224

What has been said to this point obviates the need to address Diaz' arguments under Ill. Sup. Ct. Rule 224 in order to resolve the current motion. But because the statute of limitations issue will almost surely arise again later, this Court is constrained to observe that those arguments appear to be devoid of merit.

That rule contrasts with 735 ILCS 5/2-402, which expressly provides for a six-month extension of the statute of limitations where a person is named as a respondent in discovery in a civil action (which was not the path Diaz pursued), while Rule 224 provides for an independent action in discovery <u>apart from</u> any substantive lawsuit asserting a claim. That is the course chosen by Diaz, and unlike 735 ILCS 5/2-402 it does not itself provide any extension of the limitations period. Illinois courts have made it plain (1) that the filing of a Rule 224 petition creates only such an independent action for discovery and (2) that once the petition is ruled upon the rights of the parties are determined and the litigation is terminated (see, e.g., <u>Gaynor v. Burlington N. & Santa Fe Ry.</u>, 322 Ill. App.3d 288, 289, 750 N.E.2d 307, 308 (5th Dist. 2001); <u>Beale v. Edgemark Fin. Corp.</u>, 279 Ill. App. 242, 245-46, 664 N.E.2d 302, 303-04 (5th Dist. 1996) and <u>Roth v. St. Elizabeth's Hosp.</u>, 241 Ill. App.3d 407, 413, 607 N.E.2d 1356, 1360 (5th Dist. 1993)).

### Conclusion

As stated at the outset, defendants' motion is granted in part and denied in part. As to the former, City is dismissed with prejudice as a defendant in FAC Count I. As to the latter,

Counts II-VI will not be dismissed. Defendants are ordered to answer the FAC on or before April 29, 2009.

_____
James B. Moran
Senior Judge, U.S. District Court

April 14, 2009.